BEN J. SLUTSKY et al., Copartners Doing Business under the Name of NEVELE COUNTRY CLUB, Plaintiffs, v. CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, May 11, 1950.

*Louis Berger* for plaintiffs.

*John P. McGrath, Corporation Counsel (James J. Thornton, John Suglia* and *Gertrude Herschler* of counsel), for defendant.

PECORA, J. Plaintiffs, owners of the Nevele Country Club, an all-year-round vacation resort in Ulster County, bring this action to secure a permanent injunction restraining the City of New York from undertaking, conducting or engaging in experiments to induce rain artificially. Upon this motion plaintiffs seek a temporary injunction. In effect, plaintiffs claim that the

proposed experiments to induce rain artificially will produce inundations, will make the streams in the Catskill watershed swell inordinately and cause considerable damage to riparian owners along such streams. Furthermore, plaintiffs urge that the effect of actual or threatened rainfall upon the resort business will be harmful, since an important factor in the success of such business is a moderate and desirable climate.

Against these claims, the City of New York has presented an array of facts which point inevitably to the conclusion to be reached. Those facts demonstrate that the city of New York is faced with a serious water emergency. Notwithstanding projects for increasing the water supply, which were interrupted during the war years, this critical emergency developed to an extreme in 1949 due to the severe drought that year. Those charged with the duty of furnishing the city's water supply and maintaining its quality aver that the emergency may well last for several years.

Although a number of long range programs for constructing additional reservoirs and dams for new sources of water supply have already been begun, and others are in the planning stage, certain emergency measures in the nature of short range programs have been adopted. These include restrictions on the use of water and other conservation measures, as well as the tapping of the Hudson River. Finally, the existing crisis impelled experiments in artificial rain-making.

The proof adduced by the city demonstrates that the experiments in the production of artificial rain will in no way interfere with plaintiffs' business to any appreciable extent, and that plaintiffs' assertions of possible damage are exaggerated. Apart from the legal defects in plaintiffs' suit (since they clearly have no vested property rights in the clouds or the moisture therein), the factual situation fails to demonstrate any possible irreparable injury to plaintiffs.

Contrasted with plaintiffs' unfounded speculations as to possible damage, the affidavits of the experts for the city show that the experiments have reached a stage where it might reasonably be expected that rainfall may be both induced and controlled. This court must balance the conflicting interests between a remote possibility of inconvenience to plaintiffs' resort and its guests with the problem of maintaining and supplying the inhabitants of the city of New York and surrounding areas, with a population of about ten million inhabitants, with an adequate supply of pure and wholesome water. The relief which plaintiffs ask is opposed to the general welfare and public good; and

the dangers which plaintiffs apprehend are purely speculative. This court will not protect a possible private injury at the expense of a positive public advantage. Since plaintiffs have shown neither a factual nor legal basis for the drastic relief they seek, the motion for a temporary injunction is denied.